## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION
## CIVIL ACTION NO. 3:14-CV-00491-TBR-LLK

CERES PROTEIN, LLC, *et al.*,                                          Plaintiffs,

v.

THOMPSON MECHANICAL & DESIGN, *et al.*,                    Defendants.

## MEMORANDUM OPINION AND ORDER

In 2014, Ceres Protein, LLC and Roger Shannon filed this action against Barry and Robert Thompson, along with their Ohio partnership Thompson Mechanical & Design, alleging claims for defamation and for intentional interference with a prospective business relationship. More than a year later, Ceres Protein, LLC was administratively dissolved for failing to file an annual report, and, on the Thompsons' motion, Roger Shannon and Michael Tarullo, Jr., the members of Ceres Protein, LLC, were substituted in its stead. Now, pursuant to Federal Rule of Civil Procedure 12(b)(6), the Thompsons ask the Court to dismiss this action in its entirety. Roger Shannon and Michael Tarullo, Jr. not only oppose that motion, but also seek leave to substitute the recently-reinstated Ceres Protein, LLC back into the fold. For reasons explained in detail below, Roger Shannon and Michael Tarullo, Jr.'s Motion to Amend, [R. 78], is **GRANTED**, and the Thompsons' Motion to Dismiss, [R. 74], is **GRANTED IN PART** and **DENIED IN PART**.

## I.

## A.

In 2013, Roger Shannon and Michael Tarullo, Jr. formed Ceres Protein, LLC to pursue business opportunities relating to repurposing "whole stillage," or distillery waste,

1

generated by distilleries in Kentucky and Tennessee.  [R. 63 at 5, ¶ 14 (First Amended Complaint); *see also* R. 78-2 at 4, ¶ 13 (Proposed Second Amended Complaint).]  Ceres Protein, LLC helps distilleries reduce the expense of removing spent distillers' grains, known as "slop," which result from the distilling process.  [R. 63 at 1–2, ¶ 1; *see also* R. 78-2 at 1, ¶ 1.]  Through a "comprehensive process that separates and de-waters usable solid grains," Ceres Protein, LLC transforms distiller's slop into a product called "wet cake," which is then sold to farmers for livestock feed.  [R. 63 at 2, ¶ 1; *see also* R. 78-2 at 1–2, ¶ 1.]

In early 2013, Ceres Protein, LLC cultivated two business relationships necessary to offer slop processing services to distilleries.  First, Ceres Protein approached Vincent Corporation, a manufacturer of screw presses, about providing it with the equipment needed to de-water distillers' slop and create wet cake.  [R. 63 at 5, ¶¶ 15–16; *see also* R. 78-2 at 4–5, ¶ 14–15.]  Second, Ceres Protein, LLC contracted with Land o' Lakes Purina Feed LLC to distribute the wet cake generated from its slop processing for use as livestock feed.  [R. 63 at 5, ¶¶ 15, 17; *see also* R. 78-2 at 4–5, ¶¶ 14, 16.]

Sometime around mid-2013, Michael Tarullo, Sr. (Michael Tarullo, Jr.'s father) and Barry Thompson approached Roger Shannon and Michael Tarullo, Jr. about a possible business arrangement.  [R. 63 at 5, ¶ 18; *see also* R. 78-2 at 5, ¶ 17.]  The pair proposed developing a "stage two" process whereby "wet cake could be dried to create dried distillers' grains," a product with a "lower moisture content, a longer shelf-life, and better transportability."  [R. 63 at 5–6, ¶ 18; *see also* R. 78-2 at 5, ¶ 17.]  Barry Thompson holds U.S. Patent No. 8,561,315, which protects a grain-drying system that "utilizes solar energy to pass heated air through a convention crop silo or bin" for the

2

purpose of drying grain.  [R. 63 at 6, ¶ 19; *see also* R. 78-2 at 5, ¶ 18.]  Though no one had used that patented method to process stillage before, Barry Thompson claimed that it could be adapted for Ceres Protein, LLC's uses.  [R. 63 at 6, ¶ 20; *see also* R. 78-2 at 5–6, ¶ 19.]  Michael Tarullo, Sr. and Barry Thompson offered to license that intellectual property to Ceres Protein, LLC and to contribute the capital needed during the start-up phase of the venture in exchange for a membership interest in Ceres Protein, LLC.  [R. 63 at 6, ¶ 21; *see also* R. 78-2 at 6, ¶ 20.]

Between July and October 2013, the parties attempted to negotiate such an arrangement.  [R. 63 at 6, ¶ 22; *see also* R. 78-2 at 5, ¶ 21.]  However, no agreement resulted, in part because the patented technology had not been demonstrated to work for processing wet distillery waste.  [R. 63 at 6, ¶¶ 22–23; *see also* R. 78-2 at 5, ¶¶ 21–22.]  Ceres Protein, LLC moved on and continued pursing business opportunities related to wet cake processing.  [R. 63 at 9, ¶ 30; *see also* R. 78-2 at 8, ¶ 29.]  It never "marketed or disclosed any aspect of Barry Thompson's proprietary technology" to any potential distillery customer.  [R. 63 at 9, ¶¶ 30–31; *see also* R. 78-2 at 8–9, ¶¶ 29–30.]

Following the breakdown in negotiations, Barry and Robert Thompson, his son, supposedly "fabricated an invoice" to Ceres Protein, LLC in February 2014, demanding $175,000 for "work and materials" related to the development of the "stage two" drying process.  [R. 63 at 9, ¶ 32; *see also* R. 78-2 at 9, ¶ 31.]  Ceres Protein, LLC claimed, however, that it never asked the Thompsons to do anything of the sort.  [R. 63 at 10, ¶ 35; *see also* R. 78-2 at 10, ¶ 34.]  It refused to pay the invoice.  [R. 63 at 10, ¶ 36; *see also* R. 78-2 at 10, ¶ 35.]

Subsequently, the Thompsons engaged in a pattern of conduct designed, in Ceres Protein, LLC's estimation, to extort payment on that invoice. In March 2014, for example, the Thompsons wrote to the senior executives of Distillery A,[1] a potential client with which Ceres Protein, LLC had been negotiating, accusing Ceres Protein, LLC of patent infringement. [R. 63 at 11–12, ¶¶ 41–43; *see also* R. 78-2 at 11–12, ¶¶ 40–42.] One month later, Robert Thompson informed Distillery A's executives that Ceres Protein, LLC was pursuing a business relationship with Distillery B. [R. 63 at 12, ¶ 44; *see also* R. 78-2 at 12, ¶ 43.] While Distillery A and Ceres Protein, LLC signed a nonbinding letter of intent in April 2014, Ceres Protein, LLC alleges that the Thompsons' conduct delayed the execution of that document, "causing economic harm to Ceres [Protein, LLC]." [R. 63 at 11–12, ¶¶ 42, 45; *see also* R. 78-2 at 11–12, ¶¶ 41, 44.] Distillery A's Chief Operating Officer told Roger Shannon and Michael Tarullo, Jr. that it would not finalize the arrangement unless Ceres Protein agreed to indemnify Distillery A, or until the Thompsons' dispute had been resolved. [R. 63 at 12, ¶ 45; *see also* R. 78-2 at 12, ¶ 44.]

Moreover, between March 31 and April 17, the Thompsons contacted Steel Technologies LLC, for which Roger Shannon is the Chief Financial Officer and Treasurer, on four occasions. [R. 63 at 13, ¶ 47; *see also* R. 78-2 at 13, ¶ 46.] In a letter to Michael Carroll, the Chief Executive Officer of Steel Technologies, LLC, Barry Thompson accused Roger Shannon of having "committed 'serious ethical breaches, possible patent infringement, and fraudulent activity.'" [R. 63 at 13, ¶ 47; *see also* R. 78-2 at 13, ¶ 46.] A few weeks later, Barry Thompson faxed a letter to the Board of

---

[1] Ceres Protein, LLC refers to potential distillery customers anonymously in order to comply with its confidentiality and nondisclosure obligations. [R. 76 at 4 n.2 (Response).]

Directors of Steel Technologies, LLC, and to the CEOs and Boards of Directors of Mitsui & Co. (U.S.A.) Inc. and Nucor Corporation, joint-venture partners in the entity which owns Steel Technologies, LLC, [R. 63 at 14, ¶ 50; *see also* R. 78-2 at 13, ¶ 49], claiming that Roger Shannon had been "'evasive' and 'deceptive' in [his] dealings with the Thompsons" and would "likely be the target of unspecified 'criminal charges,'" [R. 63 at 14, ¶ 51; *see also* R. 78-2 at 14, ¶ 50].  Those communications caused Michael Carroll "to question [Roger] Shannon's commitment" to Steel Technologies, LLC.  [R. 63 at 13, ¶ 49; *see also* R. 78-2 at 13, ¶ 48.]

## B.

On April 21, 2014, Ceres Protein, LLC and Roger Shannon filed this action in Jefferson Circuit Court against Barry and Robert Thompson, along with their Ohio partnership Thompson Mechanical & Design, bringing claims for defamation and for intentional interference with a prospective business relationship.  [R. 1-1 at 12, 23–26, ¶¶ 4–8, 53–73 (Complaint).]  The Thompsons timely removed that action to this Court.  [R. 1 at 1–3, ¶¶ 1–9 (Notice of Removal).]  More than a year later, Ceres Protein, LLC was administratively dissolved for failing to file an annual report.  [*See* R. 57-1 at 2–3 (Kentucky Secretary of State Records).]  Upon the Thompsons' motion, [*see* R. 54 at 1 (Motion for Joinder of Real Party in Interest)], the Court ordered Ceres Protein, LLC and Roger Shannon to amend their complaint to substitute Michael Tarullo, Jr. in Cere Protein, LLC's stead, [*see* R. 59 at 1–3 (Memorandum Opinion and Order)].  Now, the Thompsons seek to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6).  [R. 74 at 1 (Motion to Dismiss).]  Because the Kentucky Secretary of State recently reinstated Ceres Protein, [R. 78-1 at 2 (Certificate of Existence)], Roger Shannon

and Michael Tarullo, Jr. ask for leave to file an amended complaint to add Ceres Protein back into the fold, [R. 78 at 1–3 (Motion to Amend)].

## II.

### A.

Under Federal Rule of Civil Procedure 15(a)(2), the Court should freely allow a party to amend its pleading when justice so requires.  Leave to amend is liberally granted, except where there is "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, or futility of the amendment."  *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005) (citing *Coe v. Bell*, 161 F.3d 320, 341–42 (6th Cir. 1998)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).  A proposed amendment is futile "where it would not withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim."  *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 782 (6th Cir. 2015) (citing *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)), *reh'g en banc denied*, No. 15-1139 (6th Cir. Feb. 19, 2016), *petition for cert. docketed*, No. 15-1419 (U.S. May 19, 2016).  Ultimately, the decision to grant or deny leave "is committed to [this Court's] sound discretion."  *Moore v. City of Paducah*, 790 F.3d 557, 559 (6th Cir. 1989); *see also Ruschel v. Nestlé Holdings, Inc.*, 89 F. App'x 518, 521 (6th Cir. 2004).

### B.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a party must "plead enough

'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Should the well-pleaded facts support no "more than the mere possibility of misconduct," then dismissal is warranted. *Id.* at 679. The Court may grant a motion to dismiss "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x 369, 371 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 677–79).

### III.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Thompsons ask the Court to dismiss this action in its entirety. [*See* R. 74 at 1.] While the Thompsons' motion to dismiss remained outstanding, however, Roger Shannon and Michael Tarullo, Jr. sought leave to substitute Ceres Protein, LLC back into this litigation. [*See* R. 78 at 1–4.] Consequently, the Court must first decide whether to grant leave to amend before turning to the Thompsons' motion to dismiss. *See Ellison v. Ford Motor Co.*, 847 F.2d 297, 300 (6th Cir. 1988); *Marks v. Shell Oil Co.*, 830 F.2d 68, 70 (6th Cir. 1987).

### A.

Roger Shannon and Michael Tarullo, Jr. seek leave to substitute the recently-reinstated Ceres Protein, LLC in Michael Tarullo, Jr.'s stead. [R. 78 at 1.] The Thompsons oppose that request. [*See* R. 79 at 1–2 (Response to Motion to Amend).]

7

They do not argue that Roger Shannon and Michael Tarullo, Jr.'s request is untimely or made in bad faith, nor do the Thompsons explain how or why it would cause them undue prejudice.   [*See id.* at 1–10.]   Instead, the Thompsons maintain that the proposed substitution of Ceres Protein, LLC is futile because its claims for defamation and for intentional interference with a prospective business relationship are either not actionable or barred by Kentucky's statute of limitations.   [*Id.* at 3–10.]   The Court, however, disagrees, and will grant Roger Shannon and Michael Tarullo, Jr. leave to substitute Ceres Protein, LLC in Michael Tarullo, Jr.'s place.

## 1.

To begin, the Thompsons maintain that none of the three statements identified in the proposed second amended complaint will support an actionable claim for defamation.[2]  [*Id.* at 5–8.]   Those statements, as recited in the proposed second amended complaint, accuse Ceres Protein, LLC and Roger Shannon of "committ[ing] 'serious ethical breaches, possible patent infringement, and fraudulent activity.'"   [R. 78-2 at 14, ¶ 54.]   The proposed second amended complaint is futile—or so the Thompsons say—since those statements cannot plausibly state a claim for defamation.   [R. 79 at 5–8.]   Taking the well-pleaded allegations in the proposed second amended complaint as true, however, the Thompsons are mistaken.

---

[2] Though the Thompsons identified a handful of other statements too, [*see* R. 79 at 3–5 (Response to Motion to Amend)], it does not appear as though Ceres Protein, LLC bases its defamation claim on them, [*see* R. 78-2 at 14–15, ¶ 54 (Proposed Second Amended Complaint); R. 80 at 2, 8–9 (Reply in Support of Motion to Amend)].   Consequently, the Court need not—and will not—address the Thompsons' liability, if any, arising from those statements.

A *prima facie* case for defamation—whether as an action for libel or for slander[3]—requires proof of "[1] defamatory language [2] about the plaintiff [3] which is published [4] and which causes injury to reputation." *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 793 (Ky. 2004) (citing *Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270, 273 (Ky. Ct. App. 1981)), *overruled on other grounds by Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276, 287 (Ky. 2014), *as corrected* (Ky. Apr. 7, 2015), *and reh'g denied* (Ky. May 14, 2015); *accord Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003). With regard to the first element, defamatory language is broadly defined as that which "tends to (1) bring a person into public hatred, contempt or ridicule; (2) cause him to be shunned or avoided; or, (3) injure him in his business or occupation." *McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 884 (Ky. 1981); *see also* 13 David J. Leibson, *Kentucky Practice: Tort Law* § 15:2 (2015 ed.), Westlaw (databased updated December 2015). The alleged defamatory words must be construed as a whole according to "their natural meaning and in the sense in which they would be understood by those to whom addressed." *Gahafer*, 328 F.3d at 861 (quoting *Towles v. Travelers Ins. Co.*, 137 S.W.2d 1110, 1111 (Ky. 1940)); *accord McCall*, 623 S.W.2d at 884. Kentucky differentiates between two types of actionable language: language which is actionable *per se*, and language which is actionable *per quod*. *Stringer*, 151 S.W.3d at 793; *accord CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1083 (W.D. Ky. 1995), *appeal dismissed*, 95 F.3d 1168, 1996 WL 490647 (Fed. Cir. 1996) (unpublished table decision).

---

[3] "Libel is the publication of a written, defamatory, and unprivileged statement," *McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 884 (Ky. 1981), while "slander" involves the same but communicated in "oral" form, *Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003).

In a defamation *per se* action, the statement is "actionable on [its] face—without proof of extrinsic facts or explicatory circumstances." *Stringer*, 151 S.W.3d at 794 (quoting David A. Elder, *Kentucky Tort Law: Defamation and the Right of Privacy* § 1.06 (1983)). Statements of that sort include "those which attribute to someone a criminal offense, a loathsome disease, serious sexual misconduct, or conduct which is incompatible with his business, trade, profession, or office." *Gilliam v. Pikeville United Methodist Hosp. of Ky., Inc.*, 215 S.W.3d 56, 61 (Ky. Ct. App. 2006) (citing Restatement (Second) of Torts § 570 (Am. Law Inst. 1977)). If a statement is defamatory *per se*, then there is a conclusive presumption of both injury to reputation and malice; no proof of special damages is necessary. *Toler*, 458 S.W.3d at 282.

In a defamation *per quod* action, by contrast, the statement is "not actionable on [its] face, 'but may be so in consequence of extrinsic facts.'" *Disabled Am. Veterans, Dep't of Ky., Inc. v. Crabb*, 182 S.W.3d 541, 547 (Ky. 2005) (quoting *Pangallo v. Murphy*, 243 S.W.2d 496, 497 (Ky. 1951)). Put differently, the focus is not "upon the actual meaning of the words," but upon the extrinsic facts which explain the defamatory meaning of the statement. *Id.* (quoting *CMI, Inc.*, 918 F. Supp. at 1083). To establish an action for defamation *per quod*, there must be an allegation and proof of special damages. *Gilliam*, 215 S.W.3d at 61 (citing *Walker v. Tucker*, 295 S.W. 138, 139 (Ky. 1927)). Special damages are "those beyond mere embarrassment which support actual economic loss." *Rich for Rich v. Ky. Country Day, Inc.*, 793 S.W.2d 832, 838 (Ky. Ct. App. 1990) (quoting *Columbia Sussex Corp.*, 627 S.W.2d at 274).

Here, Ceres Protein, LLC and Roger Shannon's allegations plausibly state a claim for defamation. The Thompsons accused Ceres Protein, LLC and Roger Shannon of

10

Case 3:14-cv-00491-TBR-LLK   Document 86   Filed 10/18/16   Page 11 of 27 PageID #: 772

"committ[ing] 'serious ethical breaches . . . and fraudulent activity.'"  [R. 78-2 at 14, ¶ 54.]  Those two statements—which variously and "directly or indirectly import[] fraud, dishonesty, or sharp or unethical practices"—are actionable *per se*.[4]  *White v. Hanks*, 255 S.W.2d 602, 603 (Ky. 1953); *accord Marcus & Millichap Real Estate Inv. Brokerage Co. v. Skeeters*, 395 F. Supp. 2d 541, 554–55 (W.D. Ky. 2005).  In other words, their damaging effect seems plausible without the need to resort to extrinsic facts or explicatory circumstances.

The same appears to be true of the Thompsons' accusations of "possible patent infringement," though the Court is not entirely sure on that point.  *Compare Adobe Sys. Inc. v. Christenson*, 891 F. Supp. 2d 1194, 1210–11 (D. Nev. 2012) (holding accusations of "software piracy" to be defamatory *per se*), *aff'd*, 809 F.3d 1071 (9th Cir. 2015), *and Iroko Partners Ltd. v. Devace Integrated LLC*, No. 1:12-CV-01194-SCJ, 2014 WL 11716168, at *8–9 (N.D. Ga. Jan. 6, 2014) (holding accusations of "copyright infringement" to be defamatory *per se*), *and Smith v. Summit Entm't LLC*, No. 3:11CV348, 2011 WL 2200599, at *4 n.2 (N.D. Ohio June 6, 2011) (noting that a "false claim that an artistic work infringes another's copyright might be defamatory *per se*"), *with CMI, Inc.*, 918 F. Supp. at 1084 ("The Court cannot say that simply stating that a corporation violates a legal patent will constitute defamation *per se*.").  It seems plausible enough at this procedural juncture to say that charges of that ilk could tend to "prejudice"

---

[4]  The Thompsons seem to suggest that Ceres Protein, LLC and Roger Shannon cannot state a claim for defamation, in part, because the Thompsons' statement accusing them of "fraudulent activity" is not pleaded with particularity under Federal Rule of Civil Procedure 9(b).  [R. 79 at 8.]  The Thompsons' misinterpret Civil Rule 9(b).  Civil Rule 9(b) only requires particularity when a complaint "alleg[es] fraud or mistake."  Fed. R. Civ. P. 9(b).  It does not "impose a heightened pleading standard," however, when a complaint alleges defamation based on a false accusation of fraud.  *Scheser v. Island Hosp., Inc.*, No. 3:09-CV-961-S, 2010 WL 1742532, at *1 (W.D. Ky. Apr. 28, 2010).  Consequently, ordinary notice-pleading principles under Federal Rule of Civil Procedure 8(a) control.

11

Ceres Protein, LLC in its "profession, trade, or business." *Pa. Iron Works Co. v. Henry Voght Mach. Co.*, 96 S.W. 551, 553 (Ky. 1906).

The Thompsons respond, however, that accusations of "serious ethical breaches" and of "possible patent infringement" are non-actionable statements of opinion. [R. 79 at 5–8.]   True enough, a "pure" expression of opinion, "as opposed to a defamatory statement of fact, is entitled to an absolute privilege." *Biber v. Duplicator Sales & Servs., Inc.*, 155 S.W.3d 732, 737 (Ky. Ct. App. 2004).   A communication is a pure expression of opinion where it "states the facts on which the opinion is based, or where both parties to the communication know or assume the exclusive facts on which the comment is clearly based." *Yancey v. Hamilton*, 786 S.W.2d 854, 857 (Ky. 1989) (citing Restatement (Second) of Torts § 566 cmt. b).   A "mixed" expression of opinion, in contrast, enjoys no such absolute privilege.   *Id.*   A communication is a mixed expression of opinion "if it implies the allegation of undisclosed defamatory fact as [its] basis."   *Id.* (quoting Restatement (Second) of Torts § 566).   If the "recipient draws the reasonable conclusion" that the opinion is "based on undisclosed defamatory facts," then the opinion is actionable.   *Id.* (quoting Restatement (Second) of Torts § 566 cmt. c).

Even if the accusations of "serious ethical breaches" and of "possible patent infringement" expressed the Thompsons' opinion, those declarations might be "mixed," rather than "pure," expressions of opinion.   Nothing is certain since the pleadings do not contain copies of the Thompsons' communications.   Yet, drawing all reasonable inferences in Ceres Protein, LLC's favor, it is plausible to assume that the Thompsons' allegations implied the existence of undisclosed defamatory facts.   The accusations of "serious ethical breaches" and of "possible patent infringement," then, would be

actionable.  *See Marcus & Millichap*, 395 F. Supp. 2d at 554–55 (finding statement which implied that employee left his job because of his employer's "unethical practices" to be actionable).  Accordingly, on the limited record before it, the Court finds that the proposed second amended complaint plausibly states a claim for defamation.

## 2.

That notwithstanding, the Thompsons point to Kentucky's statute of limitations as an absolute bar to Ceres Protein, LLC's claims for defamation as well as for intentional interference with a prospective business relationship.  [R. 79 at 9–10; *see also* R. 77 at 4–5 (Reply in Support of Motion to Dismiss).]  There is no dispute that Ceres Protein, LLC's defamation and tortious interference claims were, as originally pleaded, timely.  Following the commencement of this action, however, Ceres Protein, LLC was administratively dissolved for failing to file an annual report, and, on the Thompsons' motion, Roger Shannon and Michael Tarullo, Jr. were substituted in its stead.  [*See* R. 59 at 1–3.]  While Ceres Protein has since been reinstated, [*see* R. 78-1 at 2–3], and seeks to carry on this action, the Thompsons argue that the limitations period of Ky. Rev. Stat. § 413.140(1)(d) resumed upon Ceres Protein, LLC's dissolution and now bars it from maintaining those claims, [*see* R. 79 at 9–10; *see also* R. 77 at 4–5].  The Court is not so sure.

Under Kentucky law, an action for defamation and—at least on these facts—for intentional interference with a prospective business relationship[5] must be "commenced"

---

[5] Though Kentucky has not established an exact limitations period for claims of intentional interference with a prospective business relationship, "a statute of limitations which specifically mentions a recognized tort applies to all actions founded on that tort regardless of the method by which it is claimed the tort has been committed."  *Lashlee v. Sumner*, 570 F.2d 107, 109 (6th Cir. 1978) (citing *Skaggs v. Stanton*, 532 S.W.2d 442 (Ky. 1975)).  Here, Ceres Protein, LLC's claim for intentional interference with a prospective business relationship is founded on its claim for defamation.  [*Compare* R. 78-2 at 14–15, ¶¶ 53–55, *with id.* at 15–16, ¶¶ 56–62.]  Accordingly, the one-year limitations period of Ky. Rev. Stat. §

within one year "after the cause of action accrue[s]." Ky. Rev. Stat. § 413.140(1)(d).  An action "commence[s]" on "the date of the first summons or process issued in good faith from the court having jurisdiction [over] the cause of action." Ky. Rev. Stat. § 413.250; *see also Eades v. Clark Distrib. Co.*, 70 F.3d 441, 442 (6th Cir. 1995).  A claim for defamation accrues when the allegedly defamatory statement is published or made, *Caslin v. Gen. Elec. Co.*, 608 S.W.2d 69, 70 (Ky. Ct. App. 1980), as does a claim for intentional interference with a prospective business relationship when founded on the same conduct, though Kentucky law is not altogether clear on that point, *see Kindoll v. Gonterman*, Nos. 2003-CA-002561-MR, 2003-CA-002638-MR, 2005 WL 386880, at *2–3 (Ky. Ct. App. Feb. 18, 2005).

Even assuming that the statute of limitations otherwise bars Ceres Protein, LLC's claims, it appears as though the motion to amend "is in the nature of a substitution of the real party in interest." *Warpar Mfg. Corp. v. Ashland Oil, Inc.*, 102 F.R.D. 749, 751 (N.D. Ohio 1983).  The real party in interest is "the person who is entitled to enforce the right asserted under governing substantive law." *Certain Interested Underwriters at Lloyd's, London, Eng. v. Layne*, 26 F.3d 39, 42–43 (6th Cir. 1994).  Since Ceres Protein, LLC holds the right to bring this action for defamation and intentional interference with a prospective business relationship under Kentucky law, it is the "real party in interest" as to those claims. *See Turner v. Andrew*, 413 S.W.3d 272, 276 (Ky. 2013); *cf.* Ky. Rev. Stat. § 275.155 ("A member of a limited liability company shall not be a proper party to a

---

413.140(1)(d) applies to Ceres Protein, LLC's claim for intentional interference with a prospective business relationship too.  *See Kindoll v. Gonterman*, Nos. 2003-CA-002561-MR, 2003-CA-002638-MR, 2005 WL 386880, at *2 (Ky. Ct. App. Feb. 18, 2005); *accord Tucker v. Heaton*, No. 5:14-CV-00183-TBR, 2015 WL 3935883, at *12 (W.D. Ky. June 26, 2015); *McIntosh v. E-Backgroundchecks, Inc.*, No. 5:12-310-DCR, 2013 WL 1187038, at *4 (E.D. Ky. Mar. 20, 2013).

proceeding by or against a limited liability company, solely by reason of being a member of the limited liability company . . . .").

When an action is maintained by someone other than the real party in interest, Federal Rule of Civil Procedure 17(a)(3), in conjunction with Federal Rule of Civil Procedure 15(c)(1), allows that party to be substituted for the original.  *See* Fed. R. Civ. P. 15(c)(1), 17(a)(3); *Corbin v. Blankenburg*, 39 F.3d 650, 654–55 (6th Cir. 1994) (en banc).  In such cases, the "stepping in" of the real party in interest "relates back to the time when the original party" filed the action.  *Corbin*, 39 F.3d at 654; *accord Ratner v. Sioux Nat. Gas Corp.*, 770 F.2d 512, 520 (5th Cir. 1985); *Hess v. Eddy*, 689 F.2d 977, 980–81 (11th Cir. 1982), *abrogated on other grounds by Wilson v. Garcia*, 471 U.S. 261 (1985); *see also* 6A Charles A. Wright et al., *Federal Practice and Procedure* § 1555 (3d ed.), Westlaw (database updated April 2016).

The Court sees no reason to prohibit Ceres Protein, LLC from taking Michael Tarullo, Jr.'s place in light of its reinstatement.  *Cf. Gomba Music, Inc. v. Avant*, 62 F. Supp. 3d 632, 642 (E.D. Mich. 2014) (finding substitution of sole owner for his defunct company appropriate).  The Thompsons will suffer no prejudice.  The claims asserted in the proposed second amended complaint are, after all, the same as those asserted in the first amended complaint, [*compare* R. 63 at 14–17, ¶¶ 54–70, *with* R. 78-2 at 14–17, ¶¶ 53–69], and the Thompsons have been aware of those claims, and of Ceres Protein, LLC's interest in pursuing them, since the inception of this action.  The policies behind the statute of limitations will not be undermined by allowing Ceres Protein, LLC to prosecute this action either.  *See Chaplake Holdings, LTD v. Chrysler Corp.*, 766 A.2d 1, 6–8 (Del. 2001).  Perhaps more to the point, it seems inequitable for the Thompsons to

obtain an order instructing Ceres Protein, LLC to substitute its members, purportedly "to allow this action to move forward with the proper parties present and properly aligned," [R. 58 at 2 (Reply in Support of Motion for Joinder of Real Party in Interest)], then seek dismissal because those members are not "proper part[ies] to [this] proceeding," [R. 74 at 11–12], all the while opposing efforts to correct that defect, [R. 79 at 8–10]. The Federal Rules of Civil Procedure "should not be used to bar a party from pursuing a cause of action because of technical infirmities" caused by an opponent's gamesmanship. *Chaplake Holdings, LTD*, 766 A.2d at 8. In sum, because the substitution of Ceres Protein, LLC as the real party in interest relates back to the filing of the original complaint, Ky. Rev. Stat. § 413.140(1)(d) poses no obstacle to Ceres Protein, LLC maintaining its claims for defamation and for intentional interference with a prospective business relationship.

### 3.

In summary, Ceres Protein, LLC has plausibly stated a claim for defamation. The Thompsons' accusations of unethical behavior, fraud, and patent infringement appear to be actionable *per se* and not privileged as pure expressions of opinion. Likewise, since the substitution of Ceres Protein, LLC relates back to the filing of the original complaint, Ky. Rev. Stat. § 413.140(1)(d) does not prohibit Ceres Protein, LLC from maintaining its claims for defamation and intentional interference with a prospective business relationship. The Court will, accordingly, grant leave for Ceres Protein, LLC to rejoin in the prosecution of this action.

16

**B.**

With the motion to amend resolved, the Court turns now to the Thompsons' motion to dismiss.[6]  The Thompsons challenge, on a variety of grounds, Ceres Protein, LLC and Roger Shannon's claim for defamation and claims for intentional interference with their prospective business relationships.  [*See* R. 74 at 7–16.]  For the most part, the Court finds the Thompsons' arguments unpersuasive.

**1.**

First, the Thompsons maintain that Ceres Protein, LLC and Roger Shannon's defamation claim must fail, in part, because the allegations of "possible patent infringement" fall under the protection of the judicial statements privilege.  [*See* R. 74 at 15–16; R. 77 at 3–4.]  The judicial statements privilege "is one that has been long adhered to in [Kentucky] and is rooted in public policy 'which looks to the free and unfettered administration of justice, though, as an incidental result, it may, in some instances, afford . . . immunity to the evil-disposed and malignant slanderer.'"  *Halle v. Banner Indus. of N.E., Inc.*, 453 S.W.3d 179, 184 (Ky. Ct. App. 2014) (quoting *Schmitt v. Mann*, 291 S.W.2d 281, 284 (Ky. 1942)); *see also Smith v. Hodges*, 199 S.W.3d 185, 189–93 (Ky. Ct. App. 2005) (discussing history of the judicial statements privilege in Kentucky).  The doctrine, if applicable, prohibits the use of "privileged communications to sustain a cause of action," including a claim for defamation.  *Halle*, 453 S.W.3d at 184.  In order for the privilege to take hold, the statement (1) must not only be "made 'preliminary to a proposed judicial proceeding, or in the institution of, or during the

---

[6] In light of the reinstatement and re-addition of Ceres Protein, LLC to this action, the Thompsons' arguments regarding the capacity of members to maintain an action on behalf of an LLC, [R. 77 at 11 (Reply in Support of Motion to Dismiss)], as well as the statute of limitations as applied to those members, [R. 74 at 11–12 (Motion to Dismiss)]], are moot.

17

course and as part of a judicial proceeding,'" (2) but also must be material, pertinent, and relevant to that proceeding, or "to a proceeding that is contemplated in good faith and under serious consideration." *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1127 (6th Cir. 1990) (first quoting Restatement (Second) of Torts § 587; then quoting Restatement (Second) of Torts § 587 cmts. c & e); *accord Morgan & Pottinger, Attorneys, P.S.C. v. Botts*, 348 S.W.3d 599, 602 (Ky. 2011), *as modified on denial of reh'g* (Ky. Oct. 27, 2011).

The Court cannot say, at this juncture, that the privilege necessarily shields the Thompsons from liability. Since it does not seem as though the Thompsons ever filed a patent infringement action against Ceres Protein, LLC or Roger Shannon, their accusations of patent infringement were not made "in the institution of, or during the course and as part of a judicial proceeding." *Gen. Elec. Co.*, 916 F.2d at 1127 (quoting Restatement (Second) of Torts § 587). Likewise, there is no indication that the Thompsons made their accusations of patent infringement "preliminary to a proposed judicial proceeding." *Id.* (quoting Restatement (Second) of Torts § 587). Instead, and taking all of Ceres Protein, LLC and Roger Shannon's well-pleaded allegations as true, the Thompsons published their accusations solely "to extort Ceres [Protein, LLC] into paying the Thompsons' bogus invoice." [R. 78-2 at 12, ¶ 42.] "The bare possibility that [a] proceeding might be instituted [cannot] be used as a cloak to provide immunity for defamation when the possibility is not seriously considered." Restatement (Second) of Torts § 587 cmt. e. Accordingly, the judicial statements privilege does not prohibit Ceres Protein, LLC and Roger Shannon from using the Thompsons' allegations of patent infringement to maintain a cause of action for defamation.

18

**2.**

Next, the Thompsons seek to dismiss Ceres Protein, LLC's claim for intentional interference with a prospective business relationship.  [*See* R. 74 at 9–10, 12–15; R. 77 at 3.]   In Kentucky, an action for intentional interference with a prospective business relationship requires (1) the existence of a valid business relationship or its expectancy, (2) knowledge thereof, (3) an intentional act of interference, (4) taken with an improper motive, (5) which caused (6) special damages.  *Halle*, 453 S.W.3d at 187; *accord Griffin v. Jones*, ––– F. Supp. 3d ––––, ––––, 2016 WL 1092879, at *7 (W.D. Ky. 2016); *Ventas, Inc. v. Health Care Prop. Inv'rs, Inc.*, 635 F. Supp. 2d 612, 621 (W.D. Ky. 2009) (*Ventas I*), *aff'd sub nom. Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291 (6th Cir. 2011) (*Ventas II*). According to the Thompsons, Ceres Protein, LLC's claim fails not only because the Thompsons' accusations of "possible patent infringement" are protected under the *Noerr–Pennington* doctrine, [*see* R. 74 at 14–15], but also because Ceres Protein, LLC has not plausibly alleged improper conduct which caused special damages, [*see id.* at 9–10, 12–14; R. 77 at 3].   Though a close call, the Court disagrees at this stage in the proceeding.

**a.**

To start, the Thompsons maintain that their accusations of "possible patent infringement" are protected under the *Noerr–Pennington* doctrine.  [*See* R. 74 at 14–15.] The *Noerr–Pennington* doctrine emanates from the First Amendment right "to petition the Government for a redress of grievances," U.S. Const. amend. I, and shields those who petition the government from litigation in connection with that protected conduct, *see VIBO Corp. v. Conway*, 669 F.3d 675, 683–84 (6th Cir. 2012).  Though originating in the

19

antitrust arena, *see E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965), it has evolved into a protean doctrine whose boundaries are far from clear.  Over the past few decades, federal and state courts, including those in Kentucky,[7] have expanded the *Noerr–Pennington* doctrine to more broadly protect petitioning activities from a number of claims brought under federal and state law, including business torts.  *See, e.g.*, *Grand Cmtys., Ltd. v. Stepner*, 170 S.W.3d 411, 415–16 (Ky. Ct. App. 2004) (extending the *Noerr–Pennington* doctrine to protect against a claim for intentional interference with contractual relations arising from a litigant's decision to appeal a rezoning decision); *see also Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776, 790 (6th Cir. 2007) (discussing, though declining to resolve, whether the *Noerr–Pennington* doctrine applied to "state common law claims sounding in tortious interference").

Regardless of its precise contours, however, the *Noerr–Pennington* doctrine is subject to a "sham" exception.  Generally speaking, the sham exception "encompasses situations in which persons use the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon."  *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 380 (1991).  Under the sham exception, there is no immunity afforded to petitioning activities which amount to nothing more than (1) an "objectively baseless" attempt (2) "to interfere directly with the business relationships of a competitor."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, ⸺ U.S. ⸺, ⸺,

---

[7] The doctrine has been the subject of few state and federal cases in Kentucky.  More than a decade ago, the Kentucky Court of Appeals and the Kentucky Supreme Court declined to reject or adopt the *Noerr–Pennington* doctrine.  *See Simpson v. Laytart*, 962 S.W.2d 392, 396 (Ky. 1998); *E. Ky. Res. v. Arnett*, 892 S.W.2d 617, 618–19 (Ky. Ct. App. 1995).  Yet, more recently, the Kentucky Court of Appeals has adopted the doctrine.  *Grand Cmtys., Ltd. v. Stepner*, 170 S.W.3d 411, 415 (Ky. Ct. App. 2004); *White v. Ashland Park Neighborhood Ass'n, Inc.*, No. 2008-CA-001303-MR, 2009 WL 1974750, at *5–8 (Ky. Ct. App. July 10, 2009).  The Kentucky Supreme Court has not spoken on the issue.

134 S. Ct. 1749, 1757 (2014) (quoting *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–61 (1993)); *accord VIBO Corp.*, 669 F.3d at 685–86; *Racetech, LLC v. Ky. Downs, LLC*, —— F. Supp. 3d ——, ——, 2016 WL 1057279, at \*5 (W.D. Ky. 2016).

Taking all of Ceres Protein, LLC and Roger Shannon's well-pleaded allegations as true, the Thompsons' communications fall under the sham exception to the *Noerr–Pennington* doctrine.[8]   Ceres Protein, LLC and Roger Shannon's proposals to, and negotiations with, potential distillery customers were limited to a single-stage de-watering process for distillers' slop—not a two-stage grain drying process involving Barry Thompson's patented technology.  [*See* R. 78-2 at 2, 7, 9, ¶¶ 1, 25, 30.]  In fact, neither Ceres Protein, LLC nor Roger Shannon "marketed or disclosed any aspect of Barry Thompson's proprietary technology" to any third-party at any point.  [*Id.* at 8, ¶ 29.]  Roger Shannon communicated that information to Robert Thompson in November 2013.  [*Id.* at 7, ¶ 25.]  Yet, just months later, the Thompsons accused Ceres Protein, LLC and Roger Shannon of having committed patent infringement.  [*Id.* at 15, ¶ 58.]  Taking those allegations at face value, the Thompsons had no objectively reasonable basis to conclude that Ceres Protein, LLC was infringing on Barry Thompson's patent.  Instead, the Thompsons' accusations were knowingly and maliciously intended to injure Ceres Protein, LLC's relationships with potential customers, such as Distillery A.  [*See id.*, ¶¶

---

[8]   The Court assumes, *arguendo*, that the Thompsons' allegations were pre-litigation communications deserving of protection under the *Noerr–Pennington* doctrine.  *Compare Racetech, LLC v. Ky. Downs, LLC*, —— F. Supp. 3d ——, ——, 2016 WL 1057279, at \*5 (W.D. Ky. 2016) (accepting, in *dicta*, the *Noerr–Pennington* doctrine as a bar to common-law claims arising from pre-litigation communications), *with Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 208 F.3d 885, 890–91 (10th Cir. 2000) (en banc) (rejecting the *Noerr–Pennington* doctrine as a bar to common-law claims arising from pre-litigation communications).  *See generally* 8 Robert A. Matthews, Jr., *Annotated Patent Digest* § 34:4, Westlaw (database updated September 2016).

60–61.]  In this procedural posture, the *Noerr–Pennington* doctrine does not shield the Thompsons from Ceres Protein, LLC's claim for intentional interference with a prospective business relationship.  *See Alt. Electrodes, LLC v. Empi, Inc.*, 597 F. Supp. 2d 322, 330–31 (E.D.N.Y. 2009); *ICOS Vision Sys. Corp., N.V. v. Scanner Techs. Corp.*, No. 05 CIV. 6322 (DC), 2006 WL 838990, at *3–5 (S.D.N.Y. Mar. 29, 2006).

### b.

For much the same reason, Ceres Protein, LLC has plausibly pleaded improper interference on the Thompsons' part.  Generally speaking, interference is improper when an actor demonstrates "malice," engages in "significantly wrongful conduct," or acts in the absence of a "justification."  *Nat'l Collegiate Athletic Ass'n ex rel. Bellarmine Coll. v. Hornung*, 754 S.W.2d 855, 859 (Ky. 1988); *accord Ventas II*, 647 F.3d at 306.  To determine if an actor's conduct amounts to improper interference, a number of factors must be balanced, including:

> [(1)] the nature of the actor's conduct, [(2)] the actor's motive, [(3)] the interest of the other with which the actor's conduct interferes, [(4)] the interests sought to be advanced by the actor, [(5)] the social interests in protecting the freedom of action of the actor and the contractual interests of the other, [(6)] the proximity or remoteness of the actor's conduct to the interference and [(7)] the relations between the parties.

*Harrodsburg Indus. Warehousing, Inc. v. MIGS, LLC*, 182 S.W.3d 529, 534 (Ky. Ct. App. 2005) (quoting Restatement (Second) of Torts § 767); *accord Ventas II*, 647 F.3d at 306; *EAT BBQ LLC v. Walters*, 47 F. Supp. 3d 521, 533–34 (E.D. Ky. 2014).  "Under Kentucky law, significantly wrongful conduct certainly includes fraudulent misrepresentation, deceit, coercion, threats of illegal conduct, and physical violence, which are specifically highlighted as improper acts."  *Ventas I*, 635 F. Supp. 2d at 622 (citing *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 487 (Ky. 1991)).  The

22

ultimate question, though, is "whether the actor's conduct was fair and reasonable under the circumstances." *Id.* (quoting Restatement (Second) of Torts § 767 cmt. j).  Of course, even if otherwise actionable, "the party whose interference is alleged to have been improper may escape liability by showing that he acted in good faith to assert a legally protected interest of his own." *Hornung*, 754 S.W.2d at 859; *accord Dennison v. Murray State Univ.*, 465 F. Supp. 2d 733, 756–57 (W.D. Ky. 2006); *see also* Restatement (Second) of Torts § 773.

Taking the well-pleaded allegations as true, which the Court must, the Thompsons' communications improperly interfered with Ceres Protein, LLC's prospective business relationship with Distillery A.  According to Ceres Protein, LLC, the Thompsons published accusations of patent infringement to Distillery A for the sole purpose of extorting payment from Ceres Protein, LLC on a substantial invoice—not in an effort to protect Barry Thompson's intellectual property rights.  [R. 78-2 at 15, ¶ 59.] Those allegations sufficiently allege improper conduct on the Thompsons' part.[9]  *See Time Warner Cable Midwest LLC v. Pennyrile Rural Elec. Coop. Corp.*, No. 5:15-CV-45-TBR, 2015 WL 4464105, at *5 (W.D. Ky. July 21, 2015) (holding conduct intended to coerce cable provider into paying a disputed rate to be improper).

**c.**

---

[9] Though the Thompsons claim to enjoy an absolute right to communicate concerns about the potential infringement of Barry Thompson's patent, [*see* R. 74 at 12–14 (discussing *Hildebrand v. Steck Manufacturing Co.*, 279 F.3d 1351, 1353 (Fed. Cir. 2002), and *Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 863 (Fed. Cir. 1997)], their argument misses the mark for the same reasons discussed *supra* Part III.B.2.a.  *Cf.* Restatement (Second) of Torts § 767 cmt. c (Am. Law Inst. 1977) (describing, as an example of improper conduct, a situation "in which the actor threatens the other's prospective customers with suit for the infringement of his patent" when he "does not believe in the merit of his claim"); *Harrodsburg Indus. Warehousing, Inc. v. MIGS, LLC*, 182 S.W.3d 529, 534 (Ky. Ct. App. 2005) ("The institution or threatened institution of a groundless lawsuit may, of course, . . . [be] considered improper interference.").

Likewise, Ceres Protein, LLC has plausibly alleged "special damages" caused by the Thompsons' improper conduct.   As discussed above, an action for intentional interference with a prospective business relationship requires, among other things, allegation and proof of "special damages," *CMI, Inc.*, 918 F. Supp. at 1080 (citing *Henkin, Inc. v. Berea Bank & Tr. Co.*, 566 S.W.2d 420, 425 (Ky. Ct. App. 1978)), as well as causation, *Ventas I*, 635 F. Supp. 2d at 624.   The term "special damages" is synonymous with pecuniary damages.[10] *Acuity Brands, Inc. v. Bickley*, —— F. Supp. 3d –——, ——, 2016 WL 1178360, at *16 (E.D. Ky. 2016); *CMI, Inc.*, 918 F. Supp. at 1081. Lost profit, for example, is "an ascertainable measure" of special damages.   *CMI, Inc.*, 918 F. Supp. at 1081 (quoting *Carmichael-Lynch-Nolan Advert. Agency, Inc. v. Bennett & Assocs., Inc.*, 561 S.W.2d 99, 102 (Ky. Ct. App. 1977)).   The special damages must be proximately caused by the improper conduct too.   *Ventas I*, 635 F. Supp. 2d at 624.   That is, the improper action "must be 'a substantial factor in bringing about the harm'" complained of.   *Id.* (quoting *Bailey v. N. Am. Refractories Co.*, 95 S.W.3d 868, 871 (Ky. Ct. App. 2001)).

Here, Ceres Protein, LLC has plausibly alleged that the Thompsons' improper conduct caused it, in substantial part, to sustain a financial loss.   In the main, the Thompsons' actions directly and adversely affected Ceres Protein, LLC's relationship with Distillery A, its potential customer.   [*See* R. 78-2 at 12, 15, ¶¶ 44, 60.]   On account of the Thompsons' communications, Distillery A has refused to enter into a contractual relationship with Ceres Protein, LLC until the Thompsons' dispute has been resolved.

---

[10] Under Federal Rule of Civil Procedure 9(g), special damages must be pleaded with *some* measure of particularity.   *See* Fed. R. Civ. P. 9(g).   Though there is no "hard and fast formula," the object of Civil Rule 9(g) is to provide the opposing party fair notice of the damages sought.   *Time Warner Cable Midwest LLC v. Pennyrile Rural Elec. Coop. Corp.*, No. 5:15-CV-45-TBR, 2015 WL 4464105, at *6 (W.D. Ky. July 21, 2015) (quoting *Action Repair, Inc. v. Am. Broad. Cos.*, 776 F.2d 143, 150 (7th Cir. 1985)).

[*Id.* at 15, ¶ 60.]  Ceres Protein, LLC's allegations of "economic harm" occasioned by the loss or delay of that deal make the showing required at this stage.  *See Time Warner Cable*, 2015 WL 4464105, at *6 (holding "allegation of lost customers and lost profits" to satisfy pleading requirement for claim of intentional interference with a prospective business relationship).

The Thompsons posit that conduct which simply delays the eventual execution of a contract does not cause "special damages" recoverable through an action for intentional interference with a prospective business relationship.  [R. 74 at 10.]  In support of that proposition, the Thompsons rely on *Texas Disposal Systems Landfill, Inc. v. Waste Management Holdings, Inc.*, 219 S.W.3d 563 (Tex. App. 2007).[11]  There, the Court of Appeals of Texas affirmed summary judgment on a claim for intentional interference with a prospective business relationship because the plaintiff had, in fact, been awarded the contracts at the heart of its claim.  *Id.* at 590.  In such a situation, a claim for intentional interference with a *prospective* contract will not lie under Texas law (and logically so).  *Id.*  Affording Ceres Protein, LLC the benefit of all reasonable inferences, though, the Thompsons' conduct has not just *delayed*, but has *prevented*, the execution of a contract with Distillery A.  [R. 78-2 at 12, ¶ 44.]  *Texas Disposal*, then, is distinguishable.  Ceres Protein, LLC's claim for intentional interference does not falter on account of any failure to plead special damages.

---

[11]  The other authorities on which the Thompsons rely, [*see* R. 74 at 10 n.6], are plainly distinguishable.  Each of those cases involved claims for intentional interference with a *contractual* relationship, which requires the improper conduct to cause a breach of contract.  *See Brooklyn Historic Ry. Ass'n v. N.Y.C.*, 7 N.Y.S.3d 152, 156 (App. Div. 2015); *Alavian v. Zane*, 101 A.D.3d 475, 476, 956 N.Y.S.2d 10, 11 (App. Div. 2012); *Temporaries, Inc. v. Krane*, 472 A.2d 668, 674 (Pa. Super. Ct. 1984).

**3.**

Last but not least, the Thompsons seek to dismiss Roger Shannon's claim that the Thompsons intentionally interfered with his at-will employment relationship with Steel Technologies, LLC.  [*See* R. 74 at 7; *see also* R. 79 at 4–5.]  Though Kentucky has not squarely addressed the issue, it seems widely accepted that an at-will employment relationship can be the subject of an action for intentional interference with a business relationship.  *See Fowler v. Coast to Coast Health Care Servs., Inc.*, No. 15-71-GFVT, 2016 WL 502057, at *4 (E.D. Ky. Feb. 8, 2016).  Despite that, the Thompsons point out that Roger Shannon has not pleaded any special damages resulting from the publication of those statements.  [*See* R. 74 at 7; *see also* R. 79 at 4–5.]  In the absence of any well-pleaded allegations of special damages, the Thompsons maintain, Roger Shannon's claim for intentional interference must fail.  [*See* R. 74 at 7; *see also* R. 79 at 4–5.]  On that point, the Thompsons are right.

Here, Roger Shannon has not identified any special or pecuniary damages attributable to the Thompsons' conduct.  [*See* R. 78-2 at 16–17, ¶¶ 63–69.]  While the Thompsons' accusations caused certain executives "to question [his] commitment" to Steel Technologies, LLC, [R. 78-2 at 16, ¶ 67], Shannon does not explain how that resulted in any type of economic harm to him, [*see* R. 76 at 13–14], such as his termination or a reduction in pay.  Consequently, Roger Shannon has not plausibly stated a claim against the Thompsons for intentional interference with a prospective business relationship.

**4.**

In summary, taking all of Ceres Protein, LLC and Roger Shannon's well-pleaded allegations as true, the judicial statements privilege does not defeat Ceres Protein, LLC and Roger Shannon's claim for defamation.  Likewise, at least in this procedural posture, the *Noerr–Pennington* doctrine does not shield the Thompsons from Ceres Protein, LLC's plausibly pleaded claim for intentional interference with a prospective business relationship.  However, Roger Shannon has not stated a claim for intentional interference with his at-will employment relationship since he cannot identify any special or pecuniary damages attributable to the Thompsons' conduct.

**IV.**

**IT IS HEREBY ORDERED** that Ceres Protein, LLC, Roger Shannon, and Michael Tarullo, Jr.'s Motion to Amend, [R. 78], is **GRANTED**.  The Clerk of the Court is **DIRECTED** to docket the attached Second Amended Complaint, [R. 78-2].

**IT IS FURTHER ORDERED** that Thompson Mechanical & Design's Motion for Leave to File a Surreply, [R. 81], is **GRANTED**.

**IT IS FURTHER ORDERED** that Thompson Mechanical & Design's Motion to Dismiss, [R. 74], is **GRANTED IN PART** and **DENIED IN PART**.

A Telephonic Status Conference is **SET** for <u>**November 10, 2016 at 1:30 p.m.**</u> <u>**EST**</u>.  Counsel must call 1 (877) 848-7030, then give the Access Code 2523122 and #, then when prompted press # again to join the call.

**IT IS SO ORDERED.**

Date:

cc:      Counsel of Record

27