**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:14-CV-00491-TBR-LLK**

CERES PROTEIN, LLC, *et al.*,                    Plaintiffs/Counterclaim Defendants,

v.

THOMPSON MECHANICAL &
DESIGN, *et al.*,                                           Defendants/Counterclaimants.

**MEMORANDUM OPINION**

In 2014, Ceres Protein, LLC and Roger Shannon filed this action against Barry and Robert Thompson, along with their Ohio partnership Thompson Mechanical & Design, alleging claims for defamation and for intentional interference with a prospective business relationship. The Thompsons responded with a counterclaim against Ceres Protein, LLC, Roger Shannon, and Michael Tarullo, Jr., pressing equitable claims for unjust enrichment and *quantum meruit*. Now, pursuant to Federal Rule of Civil Procedure 56, Ceres Protein, LLC, Roger Shannon, and Michael Tarullo, Jr. ask the Court to enter judgment on those counterclaims. The Thompsons not only oppose that motion, but also move to strike portions of Roger Shannon's affidavit, along with certain exhibits, attached to it. For reasons explained in detail below, the Thompsons' Motion to Strike, [R. 91], is **DENIED IN PART** and **DENIED IN PART AS MOOT**, and Ceres Protein, LLC, Roger Shannon, and Michael Tarullo, Jr.'s Motion for Summary Judgment, [R. 90], is **GRANTED**.

1

# I.

## A.

In 2013, Roger Shannon and Michael Tarullo, Jr. formed Ceres Protein, LLC to pursue business opportunities relating to repurposing "whole stillage," or distillery waste, generated by distilleries in Kentucky and Tennessee.  Ceres Protein, LLC helps distilleries reduce the expense of removing spent distillers' grains, known as "slop," which result from the distilling process.  Through a comprehensive process that separates and de-waters usable solid grains, Ceres Protein, LLC transforms distiller's slop into a product called "wet cake," which is then sold to farmers for livestock feed.

In early 2013, Ceres Protein, LLC cultivated two business relationships necessary to offer slop processing services to distilleries.  First, Ceres Protein approached Vincent Corporation, a manufacturer of screw presses, about providing it with the equipment needed to de-water distillers' slop and create wet cake.  Second, Ceres Protein, LLC contracted with Land o' Lakes Purina Feed LLC to distribute the wet cake generated from its slop processing for use as livestock feed.

Sometime around mid-2013, Michael Tarullo, Sr. (Michael Tarullo, Jr.'s father) and Barry Thompson, along with his son Robert Thompson, approached Roger Shannon and Michael Tarullo, Jr. about a possible business arrangement.  The trio proposed developing a "stage two" process whereby wet cake could be dried to create dried distillers' grains, a product with a lower moisture content, a longer shelf-life, and better transportability.  Barry Thompson holds U.S. Patent No. 8,561,315, which protects a grain-drying system that utilizes solar energy to pass heated air through a conventional crop silo or bin for the purpose of drying grain.  He assigned that patent to Legacy Design

2

LLC, an Ohio limited liability company, owned and operated by the Thompsons. Though no one had used that patented method to process stillage before, Barry Thompson claimed that it could be adapted for Ceres Protein, LLC's uses.

Michael Tarullo, Sr. and the Thompsons offered to license that intellectual property to Ceres Protein, LLC, to offer engineering support, and to contribute the capital needed during the start-up phase of the venture in exchange for a membership interest in Ceres Protein, LLC. Between July and October 2013, the parties attempted to negotiate such an arrangement. However, no agreement resulted.

Following the breakdown in negotiations, in December 2013, Ceres Protein, LLC sent Barry Thompson a request for a proposal for the design and construction of a drying system suitable for Ceres Protein, LLC's purposes if it decided to pursue a "stage two" process in the future. The Thompsons never responded to that request, though, and so Ceres Protein, LLC moved on and continued pursing business opportunities related to wet cake processing. It never marketed or disclosed any aspect of Barry Thompson's proprietary technology to potential distillery customers, such as Heaven Hill Distilleries Inc., with which Ceres Protein, LLC had been actively negotiating for some time.

In late January 2014, however, Barry Thompson sent a letter to Heaven Hill Distilleries claiming that certain "third parties" might have inappropriately disclosed Legacy Design LLC's patented technology to it. In addition, he explained that since the Thompsons' relationship with "a Louisville based company" to "co-develop a distiller's grain processing facility" adjoining Heaven Hill Distilleries' plant in Breckinridge, Kentucky "was never consummated," the Thompsons were "now in a position to compete for the project." [R. 116-5 at 3 (Letter from Barry Thompson to Heaven Hill Distilleries

3

Inc.).]  On February 4, Denny Potter, the plant manager at that location, responded that no one had revealed any "proprietary information" to Heaven Hill Distilleries and that it had no interest in a stage-two drying process at that time.  [R. 116-6 at 2 (E-mail from Denny Potter to Barry Thompson).]

Later that same day, the Thompsons sent an invoice to Ceres Protein, LLC demanding $175,000 for "work and materials" related to the development of the "stage two" drying process.  [R. 116-1 at 2–5 (Invoice).]  Ceres Protein, LLC claimed, however, that it never asked the Thompsons to do anything of the sort.  [R. 116-2 at 2 (E-mail from Roger Shannon to Robert Thompson).]  It refused to pay the invoice.

Subsequently, the Thompsons engaged in a pattern of conduct designed—at least in Ceres Protein, LLC's estimation—to extort payment on that invoice.  On March 13, Barry Thompson sent a second letter to Heaven Hill Distilleries, claiming that "a group operating from Ohio and Kentucky" had been improperly marketing Legacy Design LLC's "patented technology and trade secrets."  [R. 116-7 at 2–3 (Letter from Barry Thompson to Heaven Hill Distilleries Inc.).]  Three days later, Robert Thompson e-mailed Heaven Hill Distilleries and repeated those allegations.  [R. 116-8 at 2 (E-mail from Robert Thompson to Heaven Hill Distilleries Inc.).]  Although none of the Thompsons three letters identified the alleged infringer, Heaven Hill Distilleries knew the accusations were directed at Ceres Protein, LLC:  Dennis Potter forwarded Robert Thompson's e-mail to Roger Shannon and Michael Tarullo, Jr. that same afternoon.  [R. 116-10 at 2 (E-mail from Dennis Potter to Roger Shannon and Michael Tarullo, Jr.).]

The Thompsons escalated their efforts in late March.  Between March 31 and April 17, the Thompsons contacted Steel Technologies, LLC, for which Roger Shannon

was the Chief Financial Officer and Treasurer, on four occasions. [R. 116-11 at 8 (Response to Interrogatories).] In a letter to Michael Carroll, the Chief Executive Officer of Steel Technologies, LLC, Barry Thompson accused Roger Shannon of having committed "serious ethical breaches, possible patent infringement, and fraudulent activity." [R. 116-13 at 2 (Letter from Barry Thompson to Michael Carroll).] A few weeks later, on April 17, Barry Thompson faxed a letter to the Board of Directors of Steel Technologies, LLC, and to the CEOs and Boards of Directors of Mitsui & Co. (U.S.A.) Inc. and Nucor Corporation, joint-venture partners in the entity which owns Steel Technologies, LLC, claiming that Roger Shannon had been "evasive to say the least in taking financial responsibility or being truthful" to him and would likely be the target of unspecified "criminal charges in the near future." [R. 116-15 at 5 (Letter from Barry Thompson to Boards of Directors).]

## B.

On April 21, 2014, Ceres Protein, LLC and Roger Shannon filed this action in Jefferson Circuit Court against Barry and Robert Thompson, along with their Ohio partnership Thompson Mechanical & Design, bringing claims for defamation and for intentional interference with a prospective business relationship. [*See* R. 87 at 14–17, ¶¶ 53–73 (Second Amended Complaint).] The Thompsons timely removed that action to this Court, [R. 1 at 1–3, ¶¶ 1–9 (Notice of Removal)], and filed a counterclaim against Ceres Protein, LLC, Roger Shannon, and Michael Tarullo, Jr. for unjust enrichment and *quantum meruit*, [*see* R. 11 at 28–30, ¶¶ 42–53 (Counterclaim)]. Now, pursuant to Federal Rule of Civil Procedure 56, Ceres Protein, LLC, Roger Shannon, and Michael Tarullo, Jr. ask the Court to enter judgment on those counterclaims. [R. 90 at 1 (Ceres

Protein, LLC, Roger Shannon, and Michael Tarullo, Jr.'s Motion for Summary Judgment).]  The Thompsons not only oppose that motion, [*see* R. 108 at 4–16 (Response to Ceres Protein, LLC, Roger Shannon, and Michael Tarullo, Jr.'s Motion for Summary Judgment)], but also move to strike portions of Roger Shannon's affidavit, along with certain exhibits, attached to it, [R. 91 at 1 (Motion to Strike Summary Judgment Exhibits)].

## II.

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial."  *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)).  "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52).

As the parties moving for summary judgment, Ceres Protein, LLC, Roger Shannon, and Michael Tarullo, Jr. must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of the Thompsons'

claims.  Fed. R. Civ. P. 56(c); *see also Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).   Assuming that the trio satisfy their burden of production, the Thompsons "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324).

## III.

### A.

Before moving to the merits of the outstanding motion for summary judgment, the Court must first address the Thompsons' motion to strike portions of Shannon's affidavit, along with certain exhibits, attached to that motion.  [*See* R. 91 at 1.]  The Thompsons object to portions of Shannon's affidavit as containing either inadmissible hearsay, [*id.* at 2–3], or expert opinions which Shannon is unqualified to offer, [*id.* at 3–5].  In addition, the Thompsons take issue with a number of exhibits, most in the form of e-mail correspondence, as unauthenticated and inadmissible on hearsay grounds.  [*Id.* at 6–7.]  Having reviewed the exhibits in question, the Thompsons motion is denied in part as moot and in part on the merits.

To begin, a substantial part of the motion to strike is moot.  It is unnecessary to reference to any of the objected-to portions of Shannon's affidavit.  [*See* R. 90-12 at 2–5, ¶¶ 1, 4, 5, 8, 12, 14 (Shannon's Affidavit).]  There is no need to rely on a handful of the challenged exhibits either.  [*See* R. 90-6 (Request for Proposal); R. 90-10 (E-mail from Michael Tarullo, Sr. to Robert Thompson).]  Therefore, the Court will deny those portions of the motion to strike as moot.  *See, e.g., Radar Indus., Inc. v. Cleveland Die &*

*Mfg. Co.*, 632 F. Supp. 2d 686, 690 (E.D. Mich. 2009); *Glasser v. Heartland–Univ. of Livonia, MI, LLC*, 632 F. Supp. 2d 659, 673 (E.D. Mich. 2009).

Of the remaining exhibits, none contain hearsay. "Hearsay" is an out-of-court statement offered for the purpose of proving the truth of the matter asserted in that statement. Fed. R. Evid. 801(c). Hearsay is, of course, generally inadmissible, *see* Fed. R. Evid. 802, unless allowed under some exception, *see* Fed. R. Evid. 803–807, or afforded the preferential status of non-hearsay, *see* Fed. R. Evid. 801(d).

Two of the exhibits, which are e-mails from Michael Tarullo, Sr. to Roger Shannon and Michael Tarullo, Jr., [*see* R. 90-4 (E-mail from Michael Tarullo, Sr. to Roger Shannon); R. 90-5 (E-mail from Michael Tarullo, Sr. to Michael Tarullo, Jr. and Roger Shannon)], are non-hearsay pursuant to Federal Rule of Evidence 801(d)(2)(C). Under Rule 801(d)(2)(C), a statement "made by a person whom the party authorized to make a statement on the subject," if offered against that party, is not hearsay. Fed. R. Evid. 801(d)(2)(C). The content of the statement alone is insufficient to establish the speaker's authority, but the statement may be considered along with additional proof toward that end. Fed. R. Evid. 801(d)(2); *see also* 30B Charles Alan Wright et al., *Federal Practice and Procedure* § 7022 (2014 ed.), Westlaw (database updated January 2017).

There is sufficient evidence to find that Michael Tarullo, Sr. acted as an authorized agent of the Thompsons when he sent the two e-mails discussed above. For example, the e-mails purport to be from both Michael Tarullo, Sr. and Barry Thompson, [*see* R. 90-4 at 2; R. 90-5 at 2–3], which is sensible since Barry Thompson does not (by his own admission) use e-mail, [R. 108-1 at 8, ¶ 21 (Barry Thompson's Declaration)].

8

The Thompsons appear to concede in their briefing that Michael Tarullo, Sr. acted "as an intermediary" between Barry Thompson and Roger Shannon and Michael Tarullo, Jr, [R. 89-1 at 2 & n.2 (Memorandum in Support of Motion for Joinder or to Dismiss); *see also id.* at 5–6], and refer to him as "an agent on our behalf" in a discussion involving, *inter alia*, the Ceres Protein, LLC venture, [*see* R. 90-2 at 2–3 (E-mail from Robert Thompson to Michael D. Tarullo, Sr.)]. Those facts sufficiently establish Michael Tarullo, Sr. as a person "authorized" to speak on the Thompsons' behalf. *See Schweitzer v. Teamster Local 100*, 413 F.3d 533, 538–39 (6th Cir. 2005). Therefore, the two e-mails from Michael Tarullo, Sr. to Roger Shannon and Michael Tarullo, Jr. are not hearsay.

The final exhibit—which is an e-mail from Roger Shannon to Michael Tarullo, Sr., and subsequently forwarded to Barry Thompson—is not hearsay either. [*See* R. 90-3 at 2–3 (E-mail from Roger Shannon to Michael Tarullo, Sr.).] In the main, it is not relied upon for the truth of the matter asserted. *See* Fed. R. Evid. 801(c)(2). Instead, it simply provides context for the story of this litigation, for its effect on the listener, or for any number of permissible uses. *See United States v. Churn*, 800 F.3d 768, 776 (6th Cir. 2015); *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 379 (6th Cir. 2009). Those uses are not prohibited under Federal Rule of Evidence 802. *See* Fed. R. Evid. 802.

Last but not least, all of the exhibits attached to the motion for summary judgment were sufficiently authenticated. Under Federal Rule of Evidence 901, the proponent of an item of evidence "must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). For evidence that is not "self-authenticating," such as e-mail messages, *see* Fed. R. Evid. 902, the Rule sets forth a non-exclusive list of ways to authenticate such evidence, *see* Fed. R. Evid. 901(b). In this

case, circumstantial evidence, such as the context of the exchange and the e-mail addresses that appear in exhibits, along with the fact that the Thompsons produced the exhibits in discovery, sufficiently authenticate them.  *See Prout v. PRG Real Estate Mgmt., Inc.*, 51 F. Supp. 3d 702, 707 (E.D. Ky. 2014).  Accordingly, there is no basis to strike the challenged exhibits.

## B.

Turning to the merits, Ceres Protein, LLC, Roger Shannon, and Michael Tarullo, Jr. move for summary judgment on the Thompsons' counterclaims for unjust enrichment and *quantum meruit*.  [*See* R. 90 at 1.]  Through those counterclaims, the Thompsons seek to recover damages "for the time, money, and effort [that they] expended for the conceptualization, development, and testing of stillage wet cake processing."  [R. 11 at 28, ¶ 45.].  Ceres Protein, LLC, Roger Shannon, and Michael Tarullo, Jr. argue that those claims go nowhere because the services rendered were in contemplation of some future benefit, *i.e.*, an ownership interest in a successful venture.  [*See* R. 90-1 at 9–12 (Memorandum in Support of Ceres Protein, LLC, Roger Shannon, and Michael Tarullo, Jr.'s Motion for Summary Judgment.]  In those circumstances, neither theory of recovery is viable.  The Court agrees.[1]

Although two distinct causes of action, *see JP White, LLC v. Poe Cos.*, Nos. 2010-CA-000267-MR, 2010-CA-000299-MR, 2011 WL 1706751, at *4–5 (Ky. Ct. App. May 6, 2011), unjust enrichment and *quantum meruit* share much in common.  To state a

---

[1] In addition, Ceres Protein, LLC, Roger Shannon, and Michael Tarullo, Jr. argue that the counterclaims fall short because the Thompsons conferred nothing of value upon them.  [R. 90-1 at 8–9 (Memorandum in Support of Ceres Protein, LLC, Roger Shannon, and Michael Tarullo, Jr.'s Motion for Summary Judgment).]  The Thompsons vigorously contest that point.  [*See* R. 108 at 4–16 (Response to Ceres Protein, LLC, Roger Shannon, and Michael Tarullo, Jr.'s Motion for Summary Judgment).]  Since the Court disposes of the counterclaims on different grounds, it need not—and will not—address those arguments.

claim for unjust enrichment under Kentucky law, the plaintiff must establish "(1) [a] benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value." *Collins v. Ky. Lottery Corp.*, 399 S.W.3d 449, 455 (Ky. Ct. App. 2012) (quoting *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. Ct. App. 2009)); *accord Kentucky v. Marathon Petroleum Co., LP*, 191 F. Supp. 3d 694, 706 (W.D. Ky. 2016).  A claim for *quantum meruit*, on the other hand, requires a plaintiff to establish

> [1] that valuable services were rendered, or materials furnished; [2] to the person from whom recovery is sought; [3] which services were accepted by that person, or at least were received by that person, or were rendered with the knowledge and consent of that person; and [4] under such circumstances as reasonably notified the person that the plaintiff expected to be paid by that person.

*Quadrille Bus. Sys. v. Ky. Cattlemen's Ass'n, Inc.*, 242 S.W.3d 359, 366 (Ky. Ct. App. 2007) (quoting 66 Am. Jur. 2d *Restitution and Implied Contracts* § 38 (2001)); *accord C.A.F. & Assocs., LLC v. Portage, Inc.*, 913 F. Supp. 2d 333, 348 (W.D. Ky. 2012).

Ordinarily, when someone confers a benefit upon (or renders a valuable service to) another, the law presumes that the parties intended for compensation to be due for the conferred benefit (or rendered service).  *Corbin's Ex'rs v. Corbin*, 194 S.W.2d 65, 68 (Ky. 1946).  The same is not true, however, "where the work performed [was] done in anticipation of a future benefit and not a direct cash payment."  *Quadrille*, 242 S.W.3d at 366 (citing *Bishop v. Am. States Life. Ins. Co.*, 635 S.W.2d 313, 315 (Ky. 1982)).  Under Kentucky law,

> the expectation of a future business advantage or opportunity cannot form the basis of a quantum meruit [or unjust enrichment] claim; a company cannot recover for the alleged services it renders in submitting a program to a second company where it is conclusively established as a matter of law that the alleged services were preliminary services performed without

11

any thought of direct cash compensation but with a view to obtaining business through a hoped-for contract.

*Id.* at 366–67 (quoting 66 Am. Jur. 2d *Restitution and Implied Contracts* § 47).

Here, there is no genuine dispute of material fact that the Thompsons performed the work at issue in contemplation of a future benefit (*i.e.*, an ownership interest in Ceres Protein, LLC) and not for a direct monetary payment.  It is undisputed that no one expected the Thompsons to be directly compensated for their services.  For example, all of the parties' correspondence between July and October 2013 involved the Thompsons obtaining an equity interest in Ceres Protein, LLC in exchange for providing their technology and engineering support.  [*See* R. 90-3 at 2–3; R. 90-4 at 2–4; R. 90-5 at 2–3.] There was neither a discussion of paying the Thompsons an hourly rate, nor any agreement to reimburse them for their expenses.  [*See* R. 90-12 at 5, ¶ 13.]  The record does not contain anything indicating that the Thompsons performed any service with an expectation of monetary compensation.  [*See* R. 108-1 at 3–10, ¶¶ 7–27.]

Although the Thompsons eventually demanded payment for various things, the invoice came months after the services were rendered and the negotiations aimed at acquiring an equity stake in Ceres Protein, LLC had collapsed.  [*See* R. 90-9 at 2–5 (Invoice of February 4, 2014).]  Notably, the invoice itself admitted that the "[w]ork and materials were provided in exchange for ownership in Ceres Protein LLC and a share of the profits from" a distiller's grain processing facility to be built by Ceres Protein, LLC to serve Heaven Hill Distilleries.  [*Id.* at 3.]  Because the Thompsons provided work and labor with a view toward obtaining a hoped-for ownership interest in Ceres Protein, LLC,

12

no claim for *quantum meruit* or unjust enrichment will lie.[2]  *See Bishop*, 635 S.W.2d at 314–15; *Quadrille*, 242 S.W.3d at 365–68; *accord MidAmerican Distrib., Inc. v. Clarification Tech., Inc.*, 807 F. Supp. 2d 646, 680–83 (E.D. Ky. 2011), *aff'd*, 485 F. App'x 779 (6th Cir. 2012).

## IV.

Thompson Mechanical & Design, Barry Thompson, and Robert Thompson's Motion to Strike, [R. 91], is **DENIED IN PART** and **DENIED IN PART AS MOOT**. Ceres Protein, LLC, Roger Shannon, and Michael Tarullo, Jr.'s Motion for Summary Judgment, [R. 90], is **GRANTED**.

A separate order shall issue.

Date:

cc:      Counsel of Record

---

[2] In the alternative, Roger Shannon and Michael Tarullo, Jr. rely on the protection conferred by Ky. Rev. Stat. § 275.150, [*see* R. 90-1 at 12–13], which generally shields members of a limited liability company from personal liability "for a debt, obligation, or liability of the limited liability company, whether arising in contract, tort, or otherwise," Ky. Rev. Stat. § 275.150(1).  In the absence of a valid claim against Ceres Protein, LLC, however, the Court need not determine whether Roger Shannon and Michael Tarullo, Jr. would be entitled to personal immunity.